UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **JEREMY THOMAS** | **6:23-CV-01432** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **ABBEVILLE HIGH SCHOOL ET AL** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## REPORT AND RECOMMENDATION

Before the Court is the Motion to Dismiss filed by Defendants, Vermilion Parish School Board ("VPSB"), Kipp L. Duplechine, Thomas Byler, and Rodrick Moy. (Rec. Doc. 7). Plaintiff, Jeremy Thomas, opposed the Motion (Rec. Doc. 10), and Defendants replied (Rec. Doc. 11). The motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court. Considering the evidence, the law, and the arguments of the parties, and for the reasons explained below, the Court recommends that Defendants' motion be denied insofar as it seeks to dismiss the suit for lack of jurisdiction; however, the motion should be granted insofar as Defendants seeks to dismiss Plaintiff's claims for failure to state a claim.

### Factual Background

Plaintiff filed this suit pursuant to the Americans with Disabilities Act and §504 of the Rehabilitation Act against Abbeville High School ("AHS"), operated by

VPSB, Duplechine (AHS football coach), Byler (VPSB superintendent), Moy (AHS athletic director), and multiple "Doe Defendants" (Plaintiff's unnamed former peers at AHS) for alleged bad grades and bullying he suffered while a student at AHS. Plaintiff alleged that he turned eighteen years old on October 16, 2022, and that he suffers from anxiety and attention-deficit/hyperactivity disorder (ADHD), which cause difficulty focusing and coping with bullying. (Rec. Doc. 1, ¶13-14). He alleged the following relevant facts: He had an Individualized Education Plan ("IEP") due to his disabilities, but AHS never implemented his IEP, resulting in bad grades (Rec. Doc. 1, ¶15-17); while in tenth grade and on the football team, in March 2020, he was beaten in the locker room by an unidentified Doe defendant (Rec. Doc. 1, ¶18-23); following this incident and constant bullying, in March 2020, Plaintiff's mother contacted the school about the incidents but did not receive any help (Rec. Doc. 1, ¶24-26); thus, he was forced to transfer to a private school, incurring costs and suffering further as he was forced to stop playing football (Rec. Doc. 1, ¶27-30); he was forced to return to AHS later in 2020 because he was missing credits to graduate (Rec. Doc. 1, ¶31); on October 20, 2020, Plaintiff was choked and beaten in the locker room during practice (Rec. Doc. 1, ¶32); Plaintiff told Moy about the incident, but Moy accused Plaintiff of lying and causing the problem (Rec. Doc. 1, ¶33-37); Plaintiff and his mother met with Byler, the AHS principal, and Duplechine on December 2, 2020, but nothing "came out of the meeting" (Rec. Doc. 1, ¶39-40);

Plaintiff informed Defendants "about a possible impending litigation" on May 20, 2022 (Rec. Doc. 1, ¶40).

Plaintiff filed suit on October 10, 2023, asserting federal claims for violations of Title II of the ADA (Count I) and § 504 of the Rehabilitation Act (Count II), and state law claims for negligence against the individual defendants for failure to supervise students (Count III), battery claims against the Doe Defendants (Count IV), and intentional infliction of emotional distress (Count V). Defendants seek to dismiss the complaint for lack of subject matter jurisdiction on the grounds that Plaintiff failed to exhaust administrative remedies under the ADA. Jurisdiction notwithstanding, Defendants further seek dismissal on the grounds of immunity and prescription.

## Law and Analysis

Defendants first challenge subject matter jurisdiction under F.R.C.P. Rule 12(b)(1).

> When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice. The court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction. In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute. Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only

3

if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief.

*Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (internal citations omitted). Defendants first seek to dismiss the suit for lack of subject matter jurisdiction, arguing that Plaintiff failed to exhaust required administrative procedures.

## I. The IDEA and Administrative Exhaustion

Defendants argue Plaintiff failed to exhaust administrative remedies as required under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §1400 *et seq.*, and specifically §1415. In *Fry v. Napoleon Community Schools*, the Supreme Court explained:

> The [IDEA] ensures that children with disabilities receive needed special education services… Section 1415(*l*) makes clear that nothing in the IDEA "restrict[s] or limit[s] the rights [or] remedies" that other federal laws, including antidiscrimination statutes, confer on children with disabilities. At the same time, the section states that if a suit brought under such a law "seek[s] relief that is also available under" the IDEA, the plaintiff must first exhaust the IDEA's administrative procedures.
>
> The IDEA offers federal funds to States in exchange for a commitment: to furnish a "free appropriate public education"—more concisely known as a FAPE—to all children with certain physical or intellectual disabilities.
> …
> Under the IDEA, an "individualized education program," called an IEP for short, serves as the primary vehicle for providing each child with the promised FAPE. Crafted by a child's "IEP Team"—a group of school officials, teachers, and parents—the IEP spells out a

4

personalized plan to meet all of the child's "educational needs." §§ 1414(d)(1)(A)(i)(II)(bb), (d)(1)(B).

…

Because parents and school representatives sometimes cannot agree on such issues, the IDEA establishes formal procedures for resolving disputes.[1]

*Fry v. Napoleon Cmty. Sch.,* 580 U.S. 154, 157–59, 137 S. Ct. 743, 748–49 (2017) (cleaned up).

The *Fry* court established the framework for determining whether claims are governed by the IDEA's administrative exhaustion requirement:

Section 1415(*l*) requires that a plaintiff exhaust the IDEA's procedures before filing an action under the ADA, the Rehabilitation Act, or similar laws when (but only when) her suit "seek[s] relief that is also available" under the IDEA. We first hold that to meet that statutory standard, a suit must seek relief for the denial of a FAPE, because that is the only "relief" the IDEA makes "available." We next conclude that in determining whether a suit indeed "seeks" relief for such a denial, a court should look to the substance, or gravamen, of the plaintiff's complaint.

*Id.,* at 165.

The *Fry* Court explicitly did not decide whether the IDEA's exhaustion requirement applies to a case in which "the plaintiff complains of the denial of a FAPE, but the specific remedy she requests [such as money damages] is not one that

---

[1] The IDEA's dispute procedure commences with a parent's complaint submitted to the local state agency, followed by a preliminary meeting and/or a mediation process before proceeding to a due process hearing, the outcome of which is ultimately appealable. *Fry*, referencing 20 U.S.C. §1415.

an IDEA hearing officer may award." *Id*. at fn. 4 and 8. However, the Court resolved the issue a few years later in *Perez v. Sturgis Public School*, holding that the IDEA's exhaustion requirement does not apply to claims for relief the IDEA does not provide, such as claims for compensatory damages. *Luna Perez v. Sturgis Pub. Sch.,* 598 U.S. 142, 148, 143 S. Ct. 859, 864 (2023).

Thus, the analytical framework is as follows:

> [I]n a suit against a public school for alleged violations of the ADA or other similar anti-discrimination statutes, the court should first assess whether the gravamen of the complaint concerns the denial of a FAPE or, instead, is based on disability discrimination. If the complaint does not concern the denial of a FAPE, then the plaintiff need not go through the IDEA's administrative hurdles. On the other hand, if the complaint *is* predicated on a FAPE denial, then the court must then ask what relief is sought. If the relief sought is not one that the IDEA can provide (such as compensatory damages), then, again, the plaintiff need not go through the IDEA's administrative hurdles. But if the relief sought is of the type that the IDEA offers, then the plaintiff must fully exhaust the administrative processes as required by § 1415(l).

*Lartigue v. Northside Indep. Sch. Dist.,* 86 F.4th 689, 693–94 (5th Cir. 2023).

Turning to Plaintiff's complaint in this case, the Court considers Plaintiff's claims as presenting two distinct issues: 1) ADA and §504 claims against AHS (VPSB) for failure to implement Plaintiff's IEP (Counts I and II); and 2) tort claims based upon alleged bullying. This Court's subject matter jurisdiction hinges upon Plaintiff's federal ADA and §504 claims. Therefore, the Court does not consider Plaintiff's bullying claims which are state law issues over which the Court has

6

supplemental jurisdiction *if* the Court otherwise has jurisdiction under 28 U.S.C. §1331.

### A. <u>Whether the gravamen of the complaint is Defendants' denial of a FAPE.</u>

The Court first asks: is the gravamen of the complaint Defendants' denial of a FAPE, or, instead based upon disability discrimination? As explained by the Fifth Circuit, *Fry*

> … offered two "clues" as to how district courts may determine the gravamen of a complaint. The first clue consists of two hypotheticals:
>
> First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library? And second, could an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance?
>
> Where a court answers both of those questions in the affirmative, the claim is not rooted in the denial of a FAPE, and the exhaustion of the IDEA's administrative remedies is not required. Alternatively, where a court answers "no" to both, "then the complaint probably does concern a FAPE, even if it does not explicitly say so...."
>
> However, the answers to these hypotheticals are not entirely dispositive...The second clue the Court offered was to look to the history of the proceedings, particularly whether "a plaintiff has previously invoked the IDEA's formal procedures to handle the dispute," as another possible indicator that the gravamen of the suit is in the denial of a FAPE. "[P]rior pursuit of the IDEA's administrative remedies will often provide strong evidence that the substance of a plaintiff's claim concerns the denial of a FAPE, even if the complaint never explicitly uses that term." *Id.*

*T. B. by & through Bell v. Nw. Indep. Sch. Dist.,* 980 F.3d 1047, 1052 (5th Cir. 2020), quoting *Fry*, at 756-57.

Plaintiff alleges in Counts I and II that AHS discriminated against him on the basis of his disability by intentionally ignoring his IEP, resulting in bad grades which will affect his future academic and professional career. (Rec. Doc. 1, ¶45-56; 60-66). He seeks declaratory and injunctive relief as well as "actual damages for financial loss and emotional distress and punitive damages." (Rec. Doc. 1, ¶57; 67). Applying *Fry'*s first clue, the Court finds that Plaintiff could not have brought such claims against any other public facility, because the implementation of an IEP is an obligation unique to schools under IDEA. See generally 20 U.S.C. §1414. Likewise, the Court finds that an adult at the school could not have brought such claims, as efforts to enforce or modify IEPs are personal to the student, his representative, and/or the school. *Id*. See also *C. G. by & through Keith G. v. Waller Indep. Sch. Dist.,* 697 F. App'x 816, 821 (5th Cir. 2017), *as revised* (June 29, 2017). Regarding the next step—looking to Plaintiff's prior invocation of administrative procedures—the Court finds Plaintiff's allegations are ambiguous. Although Plaintiff alleges that his mother met with school officials (Rec. Doc. 1, ¶25; 38-40), it is unclear whether these meetings were conducted pursuant to IDEA administrative procedures. Having answered the initial questions in the negative, and noting the second "clue" is

8

nondeterminative, the Court finds the gravamen of Plaintiff's claims is denial of a FAPE, despite Plaintiff's discrimination-type language.

### B. What relief is sought?

Having found that Plaintiff's complaint is grounded in Defendants' alleged denial of FAPE, the Court must ask whether the relief sought is available under IDEA. An affirmative answer requires exhaustion of administrative remedies. Otherwise, a request for relief not available under IDEA relieves Plaintiff of pre-suit administrative procedures.

Plaintiff seeks declaratory and injunctive relief, each of which are cognizable under the IDEA. See §1415 generally. Plaintiff also seeks damages for financial loss, specifically costs for attending a private school, which the IDEA can also restore. See 34 C.F.R. §300.148; *Forest Grove Sch. Dist. v. T.A.,* 557 U.S. 230, 247, 129 S. Ct. 2484, 2496 (2009). However, Plaintiff also seeks compensatory and punitive damages, neither of which the IDEA can remedy. *J.W. v. Paley*, 81 F.4th 440, 448 (5th Cir. 2023). As the Supreme Court and the Fifth Circuit have recently held, to the extent the plaintiff seeks compensatory and punitive damages, he is not required to exhaust administrative remedies under §1415(l). *Lartigue*, 86 F.4th at 697. Even

if the claim is premised on the denial of a FAPE, Plaintiff may pursue standalone ADA and/or §504 claims.[2] See *id.*

Defendants attempt to circumvent *Perez* and *Lartigue*'s application to this case by arguing, essentially, that Plaintiff failed to state a claim for compensatory damages, because his allegations do not show intentional discrimination. (Rec. Doc. 7-1, p. 6). The Court finds that this argument is better addressed under F.R.C.P. Rule 12(b)(6). Because, as discussed below, Plaintiff's claims are prescribed on the face of the complaint, the Court declines to engage in a detailed analysis of whether Plaintiff stated ADA or §504 claims. The fact that Plaintiff seeks compensatory and punitive damages for standalone ADA and §504 claims suffices to confer federal court jurisdiction. Thus empowered, the Court may consider whether Plaintiff has stated a claim upon which relief may be granted.

---

[2] The Court notes that although standalone ADA and/or §504 claims may survive a jurisdictional challenge, such claims may, in some cases, nevertheless be stayed if Plaintiff also seeks IDEA relief which must first proceed administratively. See *Perez*, 598 U.S. at 150, 143 S.Ct. 859 ("[A] plaintiff who files an ADA action seeking both damages and the sort of equitable relief IDEA provides may find his request for equitable relief barred or deferred if he has yet to exhaust [IDEA procedures]."). See also *J.W. v. Paley*, 81 F.4th at 448, commenting on practical considerations of proceeding with intertwined claims. The Court need not decide how Plaintiff's intertwined claims should proceed, since, as discussed below, Plaintiff's claims are time-barred.

### II. Whether Plaintiff's claims otherwise survive.

Having found the Court has jurisdiction over Plaintiff's ADA and §504 claims, the Court next considers Defendants' arguments that these claims should nonetheless be dismissed under Rule 12(b)(6) for failure to state a claim.

The defendant may challenge the complaint for failing to state a claim by filing a motion to dismiss under F.R.C.P. Rule 12(b)(6). When considering a motion to dismiss for failure to state a claim, the district court must limit itself to the contents of the pleadings, including any attachments and exhibits thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.,* 355 F.3d 370, 375 (5th Cir.2004). The court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir.2007) Conclusory allegations and unwarranted deductions of fact are not accepted as true, *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982); *Collins v. Morgan Stanley*, 224 F.3d at 498. The law does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). The allegations must be sufficient "to raise a right to relief above the speculative level," and "the pleading must contain something more …than…a statement of facts that merely creates a suspicion [of] a legally cognizable

right of action." *Id.* at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)).

Defendants present multiple arguments, including immunity arguments and requests for dismissal of certain claims against individual/official capacity defendants. (Rec. Doc. 7-1, p. 8-13). The Court declines to address these arguments where prescription unequivocally warrants dismissal of all claims. "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.,* 339 F.3d 359, 366 (5th Cir. 2003).

Plaintiff's ADA and §504 claims do not provide a limitations period. Hence, the Court must "borrow the most analogous period from state law," which is the personal injury limitations. *Frame v. City of Arlington*, 657 F.3d 215, 237 (5th Cir. 2011). Louisiana's prescriptive period for filing tort actions is one year. La. Civil Code art. 3492. However, the accrual date is determined by federal law:

> [T]he rule is that accrual occurs when a plaintiff has "a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." In other words, accrual occurs "the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured."

*Frame*, 657 F.3d at 238 (footnotes and citations omitted).

Plaintiff alleged that AHS "never implemented" his IEP, which was in place when he attended elementary school. (Rec. Doc. 1, ¶15-16). He alleged that he was

12

bullied in 2020, noting particular incidents in March 2020 and October 2020. (Rec. Doc. 1, ¶18-25; 32). The latest date alleged in the complaint is May 20, 2022, when Plaintiff alleges Defendants were informed about possible litigation. (Rec. Doc. 1, ¶40). This is the last possible date on which Plaintiff could have been aware that he suffered an injury (although the allegations support a much earlier date). Plaintiff filed this suit on October 10, 2023, well over a year after even the most recent date alleged.

In response, Plaintiff asserts his causes of action did not accrue until he reached the age of majority on October 16, 2022; however, Louisiana tolling law dictates the opposite result. "When a federal cause of action borrows a state statute of limitations, 'coordinate tolling rules' are usually borrowed as well." *King-White v. Humble Indep. Sch. Dist.,* 803 F.3d 754, 764 (5th Cir. 2015). La. Civ. Code art. 3468 states: Prescription runs against absent persons and incompetents, including minors and interdicts, unless exception is established by legislation. Plaintiff did not identify any exception applicable to this case. Compare *King-White, supra*, wherein Texas law *did* allow for tolling until the age of majority. Thus, Plaintiff's federal law

13

claims are time-barred. For the same reasons, Plaintiff's state law claims for negligence, battery, and IIED are also prescribed.[3]

## Conclusion

For the reasons discussed herein, the Court recommends that Defendants' Motion to Dismiss (Rec. Doc. 7) be GRANTED IN PART AND DENIED IN PART. The motion should be denied to the extent Defendants seek to dismiss pursuant to F.R.C.P. Rule 12(b)(1) for lack of jurisdiction. The motion should be granted to the extent Defendants seek to dismiss pursuant to F.R.C.P. Rule 12(b)(6) for failure to state a claim. Plaintiff's claims should be dismissed with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within

---

[3] Similar to Plaintiff's federal claims, his state law tort claims accrued from the date the damage was sustained. *Butler v. Denka Performance Elastomer, L.L.C.,* 16 F.4th 427, 437–38 (5th Cir. 2021).

fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 2nd day of February, 2024.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE